IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

MODERN WOODMEN OF AMERICA,

    Movant,

        v.

GREEN DOT CORPORATION and
GREEN DOT BANK,

    Non-Movants.

Case No. 14-mc-4021 (SLD) (JEH)

**GREEN DOT CORPORATION AND GREEN DOT BANK'S MEMORANDUM OF LAW IN OPPOSITION TO MODERN WOODMEN OF AMERICA'S MOTION TO QUASH FOREIGN SUBPOENA**

Preliminary Statement

    Modern Woodmen's motion to quash has no substantive merit, and there are no confidentiality, relevancy, or burden concerns that should preclude Green Dot Corporation and Green Dot Bank (collectively, "Green Dot") from taking an absolutely standard deposition in a trademark case, namely, the deposition of a third-party using a similar trademark. This deposition will take place in the immediate vicinity of Modern Woodmen's corporate offices and Green Dot would agree to limit its questioning to 90 minutes. Even taking into account any questions that another party might ask, there is no reason to believe that this deposition will last more than 3 hours. Accordingly, any burden concerns are unfounded.

    Putting the lack of substantive merit to the side, Modern Woodmen's motion is even more unpalatable because Modern Woodmen *never* picked up the phone and shared its concerns with Green Dot before filing this motion. Green Dot respectfully refers the Court to Exhibit A attached hereto, in which Modern Woodmen's lawyer represented that he would call Green Dot's

1

lawyer to discuss any concerns *before* filing this potential motion. Instead, Modern Woodmen filed this motion and *never* called Green Dot to discuss. The very first time that Green Dot heard that Modern Woodmen had confidentiality or burden concerns was when Green Dot read about them in Modern Woodmen's Memorandum of Law.

If Modern Woodmen's lawyer had called his Green Dot counterpart and expressed any confidentiality or burden concerns before filing this motion, Green Dot would have told Modern Woodmen what Green Dot expressly tells the Court now, namely, ***Green Dot does not seek any confidential or personal Modern Woodmen customer information. Green Dot does not seek a single name, social security number, bank account number, address, or any other personal information at all***. Indeed, the only two deposition topics that Modern Woodmen references in its Motion have absolutely nothing to do with personal customer information, specifically (1) "[e]ach trademark that [Modern Woodmen has] used that includes both 'Go' and 'Bank,' including all terms, phrases, and logos, and including but not limited to the marks GOBANKING and GO BANKING;" and (2) "[Modern Woodmen's] advertising, marketing, distribution, or promotion of goods and services, bank cards, webpages, mobile device applications, and any other tangible or intangible disseminations that [Modern Woodmen has] distributed to the public that include any of the trademarks encompassed by Deposition Topic 1." *See* Modern Woodmen Motion at 4; *see also* Exhibit 1 to Modern Woodmen Motion at 3 – Deposition Topics 1 and 6. Modern Woodmen invents a dispute that does not exist in order to evade a completely standard deposition, and Modern Woodmen's statements concerning confidential customer information are conclusory and not at all faithful to the deposition topics at issue.

Furthermore, even if Modern Woodmen's witness inadvertently reveals personal customer information or any other confidential information during the deposition, there is

already a protective order in place governing the underlying New York litigation that fully protects Modern Woodmen's interests and rights.  *See* Exhibit B.  Green Dot shared this protective order with Modern Woodmen's counsel months ago – long before this motion was filed – and Modern Woodmen produced documents in response to Green Dot's document subpoena pursuant to this protective order**.**  Accordingly, Modern Woodmen knows full well that a protective order is in place that more than sufficiently protects its interests.

In sum, Green Dot has nothing but respect for Modern Woodmen's confidentiality interests, but Green Dot's subpoena is narrowly tailored and does not seek customer information.

Additional Argument

**Green Dot's Deposition Subpoena Seeks Plainly Relevant Information**. The underlying litigation for which Green Dot served its subpoena is *Flushing Bank v. Green Dot Corporation and Green Dot Bank*, currently pending in the Southern District of New York (Case No. 13-cv-9120; Forrest, J.).  In this litigation, Flushing Bank alleges that Green Dot's GOBANK trademark is likely to be confused with Flushing Bank's IGOBANKING trademark, and that consumers will mistakenly believe that Green Dot's GOBANK mobile banking service is the same as, affiliated with, or authorized by Flushing Bank's IGOBANKING banking service.  *See* Exhibit C (Flushing Bank Amended Complaint).

*Green Dot's deposition subpoena seeks relevant information for at least three different reasons:* First, Modern Woodmen's use of the virtually identical GOBANKING trademark for banking services squarely undercuts Flushing Bank's allegation that Green Dot's use of the GOBANK trademark is likely to cause consumer confusion.  Modern Woodmen claims in its motion (at 6) that "the trademarks and activities of Modern Woodmen *are irrelevant to the factors* that will be used to decide the case between Green Dot and Flushing Bank," but this

3

claim is not only incorrect but also simply indefensible (emphasis added; Modern Woodmen makes the same claim in its Motion at 4 and 5, *and* also incorrectly claims at 5 that "[n]one of the [*Polaroid*] factors relate to third parties").

As Modern Woodmen concedes in its motion (at 5), "the strength of [the prior owner's] mark" is one of the factors used to determine likelihood of confusion (this is one of the *Polaroid* "likelihood of confusion" factors that Modern Woodmen cites in its block quotation). In turn, ***there are legions of cases in the Second and Seventh Circuits firmly establishing that the strength of plaintiff's mark depends on the number of third-parties using similar marks in the marketplace***, and Modern Woodmen does not cite a single case to the contrary. *See, e.g.*, *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) (holding within "strength" portion of *Polaroid* likelihood of confusion inquiry that "third party use of the words 'street' and 'wise' weakens the strength of [plaintiff's] mark" and that as a result of such third-party use, "[plaintiff's mark] is not particularly distinctive in the marketplace"); *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1171 (7th Cir. 1986) (holding that third-party marks "are material in determining the strength of [plaintiff's] mark" if such marks "are promoted by their owners or recognized by the consuming public"); *CAE, Inc. v. Clear Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001) (citing *McGraw-Edison* and examining third-party uses of allegedly similar marks as part of "strength" inquiry within likelihood of confusion test); *Kate Spade LLC v. Saturdays Surf LLC*, 950 F. Supp. 2d 639, 644 (S.D.N.Y. 2013) (holding within "strength" portion of *Polaroid* confusion inquiry that the mark at issue "is weakened by the fact that the word really at issue in this case – 'Saturdays' – has somewhat extensive third-party use"); *Giggle, Inc. v. Netfocal Inc.*, 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012) (holding that "prevalent third-party use has severely weakened [plaintiff's mark] as a stand-alone word mark,"

4

and citing *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) for the instruction of "directing courts to look at 'the use of part or all of the mark by third parties' since third-party use 'weakens its overall strength'").

Clearly, Green Dot should be permitted to take a deposition concerning Modern Woodmen's use of the GOBANKING mark. Such use directly supports Green Dot's defenses in this litigation and Green Dot's position that Flushing Bank's IGOBANKING mark is very weak, and this is one of the reasons why there is no likelihood of confusion.

The second reason why Green Dot's deposition subpoena seeks relevant information is because *Flushing Bank sent a cease-and-desist letter to Modern Woodmen in late 2013* concerning Modern Woodmen's GOBANKING mark, and after Modern Woodmen refused to stop using its mark, Flushing Bank dropped its challenge and never followed up. Modern Woodmen does not mention Flushing Bank's prior trademark challenge *anywhere* in its motion. However, this fact also directly undercuts Flushing Bank's claim that Green Dot's use of the GOBANK mark is infringing, because otherwise Flushing Bank would not have dropped its challenge to Modern Woodmen's *even more similar* GOBANKING mark. Green Dot is entitled to take deposition testimony from Modern Woodmen regarding this episode in which Flushing Bank challenged and then dropped its objection to Modern Woodmen's GOBANKING mark.

Third, and finally, as mentioned above, Modern Woodmen has already produced documents in response to Green Dot's document subpoena, and the topics for which Modern Woodmen produced documents **mirror the topics in Green Dot's deposition subpoena**. *Compare* Exhibit D at 8-9 (Green Dot document requests) with Exhibit 1 to Modern Woodmen Motion at 3-4 (Green Dot deposition topics). If Green Dot is not able to authenticate Modern Woodmen's documents via deposition, Green Dot runs the risk that some of these documents

5

might be excluded from trial on hearsay or other grounds.  Green Dot does not concede that it needs a deposition in order to be able to introduce Modern Woodmen's documents at trial, but authenticating these documents via a deposition is utterly standard and efficiently resolves any potential authentication concerns.  *Green Dot also notes in passing that the fact that Modern Woodmen produced documents in response to these categories squarely contradicts Modern Woodmen's claim that these categories are irrelevant*.

**A Fees Award Is Warranted Here**.  For the reasons discussed above, Modern Woodmen's motion has no substantive merit – there are no confidentiality concerns, Green Dot's deposition topics are narrowly-tailored and plainly relevant, and Modern Woodmen did not even try to amicably resolve these issues before filing this baseless motion.  Indeed, as Exhibit A demonstrates, Modern Woodmen's lawyer represented to Green Dot's lawyer that he would call to discuss before filing any motion, and he never did so.

With these facts in mind, and although Green Dot does not make this request lightly, Green Dot respectfully submits that an award of its fees incurred in opposing this motion is warranted pursuant to this Court's equitable powers.  Had Modern Woodmen's lawyer picked up the phone before filing this motion, Green Dot would have explained that Green Dot only sought a 90-minute deposition and did not seek any personal customer information.

Indeed, not only would Green Dot have told this to Modern Woodmen, *but also Green Dot's counsel did tell this to Modern Woodmen's counsel the morning after Modern Woodmen filed this motion*.  Green Dot's lawyer (Adam Siegartel) called and spoke to Modern Woodmen's lawyer (Tom Moore) the morning of June 13, and Mr. Siegartel unambiguously told Mr. Moore that Green Dot did not seek personal information and sought no more than 90 minutes of testimony.  Even with these representations in hand, however, Modern Woodmen

6

has not withdrawn this motion. This motion shows no regard for judicial economy or the hope that parties will try to amicably resolve issues before seeking court intervention. Green Dot has done everything it can to amicably resolve this issue but has had no choice but to prepare and file this opposition, and then prepare and travel for oral argument. For all of these reasons, Green Dot respectfully requests that Modern Woodmen be ordered to pay for Green Dot's legal fees incurred in connection with this motion, including the preparation of opposition papers and the costs and fees in attending oral argument.

## Conclusion

For all of the reasons above, Green Dot respectfully requests (1) that Modern Woodmen's motion be denied; (2) that Green Dot be permitted to promptly proceed with its deposition at a date and time mutually convenient for Green Dot and Modern Woodmen; and (3) that Modern Woodmen be ordered to pay for Green Dot's legal fees incurred in connection with this motion.

Respectfully submitted,

Dated: June 30, 2014

By: _/s/Amanda C. Wiley_____
Amanda C. Wiley
PROSKAUER ROSE LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602
Tel.: (312) 962-3550
Fax: (312) 962-3551
awiley@proskauer.com

Adam Siegartel (admission request to be filed)
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900
asiegartel@proskauer.com

*Attorneys for Non-Movants*
*Green Dot Corporation and Green Dot Bank*

**CERTIFICATE OF SERVICE**

I, Amanda C. Wiley, one of the attorneys for Green Dot Corporation and Green Dot Bank, certify that I caused a copy of the attached Memorandum of Law in Opposition to Modern Woodmen of America's Motion to Quash Foreign Subpoena to be served via the Court's ECF Filing System on:

> Robert J. Noe
> Bozeman, Neighbour, Patton & Noe, LLP
> Fifth Avenue Building
> 1630 Fifth Avenue
> P.O. Box 659
> Moline, IL 61266-0659
> rnoe@bnpn.com
> Counsel for Modern Woodmen of America
>
> Adam Matthew Marshall
> Ariel Elaine Ronneburger
> James Gerard Ryan
> Jennifer A. McLaughlin
> Cullen and Dykman, LLP (Nassau)
> 100 Quentin Roosevelt Blvd.
> Garden City, NY 11530
> Counsel for Flushing Bank

this 30th day of June, 2014.

/s/ Amanda C. Wiley

8